[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S COMPETENCY
The Defendant is charged with one count of illegal possession of narcotics (C.G.S. 21a-279a), one count of sale of narcotics (C.G.S. 21a-278 (a)), and one count of possession of drugs near a prohibited place (C.G.S. 21a-279d). CT Page 14185
Counsel for the Defendant moved the court, pursuant to C.G.S.54-56d, for an evaluation of the Defendant's competency to stand trial. The court granted that motion on September 9, 1999 and ordered that an examination be conducted by the Department of Mental Health and Addiction Services.
A clinical evaluation team from that agency evaluated the Defendant on September 22, 1999. The team, which consisted of a psychiatrist, a licensed psychologist and a licensed clinical social worker, rendered a unanimous decision that the Defendant was competent to stand trial. The team's five-page written report dated September 27, 1999 was submitted to the court and concluded that the Defendant ". . . demonstrated a rational understanding of the proceedings and could assist in her defense at this time." (State's Exhibit 2, P. 5).
The Defendant contested the team's findings, and a hearing on this matter was conducted by the court on October 19, 1999. At hearing, the Defendant introduced the testimony of a licensed clinical psychologist retained by the defense who had examined the Defendant and found her incompetent to stand trial. This expert's written report was also introduced into evidence (State's Exhibit 1) at the hearing.
The licensed clinical social worker from the DMHAS evaluation team testified for the state on October 19, and the team's written report (State's Exhibit 2) was also submitted into evidence.
 FACTUAL FINDINGS
The court has carefully considered all of the evidence and testimony adduced at the contested competency hearing and makes the following factual findings:
The Defendant is 19 years old. She completed high school, but has difficulty in math, repeated the 12th grade and has been in special education classes since age 14. She receives social security disability income, but has worked in the past at various jobs, including stacking grocery shelves, cleaning offices and housekeeping. She reportedly suffered a head injury as an infant.
The clinical evaluation team concluded that the Defendant was oriented as to person, place and time and displayed no symptoms CT Page 14186 of hallucinations nor delusional thinking. This evidence was not controverted by the defendant's expert.
Although both witnesses found that the Defendant did not know certain words, the Defendant told the clinical evaluation team that she was charged with possession of narcotics with intent to sell and appeared to recognize that this was a serious charge. The Defendant related information to both the team, and her own psychologist, which indicated that she remembered the time, date and place of her arrest, and was able to relate explicit details of the events which surrounded her arrest on the instant charges. She knew that the drugs which were allegedly seized from her would be used as evidence at trial.
The Defendant told the DMHAS evaluators that she was represented in this case by a public defender whom she knew as "Miss Robin."[1] The Defendant knew that her public defender would represent her in court and understood the difference between the terms "guilty" and "not guilty." The team found that after some explanation to the Defendant, she also displayed a simplistic understanding of the roles of the judge and prosecutor in a criminal proceeding, and of the adversarial nature of a criminal trial. The team's report indicates:
 "During this examination, [Defendant] demonstrated some working knowledge of courtroom personnel . . . and possible outcomes of her case. In areas where she lacked an understanding of certain concepts, the team provided explanations and later in the interview she was able to define such terms and use them within the proper context. Although her comprehension of the adversarial process was somewhat limited, she was able to identify relevant information and was willing to defend herself and convey this information to her defense attorney. In the team's view, the Defendant is capable of understanding her attorney's advice and of making rational decisions based on that advice. If required, she could testify on her own behalf and be cross examined. She maintained her composure throughout the examination and there is no evidence at this time that she would not be able to behave similarly while in court." (State's Exhibit 2, P. 5).
The clinical evaluation team found that the Defendant's intelligence was below average and that she displayed impairment CT Page 14187 in her concentration, abstracting ability and social judgment. (State's Exhibit 2, P. 5). The team members also concluded that while these deficits do not render the Defendant incompetent to stand trial, she ". . . would benefit from instructions and advice which are presented in simplistic terms and repeated if necessary." (State's Exhibit 2, P. 5). The court accepts the forgoing opinions of the clinical evaluation team as fact.
The psychologist retained by the defense conducted a battery of intelligence tests of the Defendant. He concluded that the Defendant had a full-scale IQ of 54, which placed her in the mentally retarded range. He found the Defendant to be a mentally retarded person who displayed minimal knowledge of courtroom procedures and the criminal nature of the charges she was facing. (State's Exhibit 1, Page 2). His report stated:
 "She did not know, the consequences she faced or the circumstances that could allow the court to consider alternatives to incarceration." (State's Exhibit 1).
The defendant's expert witness did not believe that the Defendant could fully comprehend and appreciate choices and alternatives in courtroom procedures. This prompted him to conclude that the Defendant could not responsibly participate in her defense, and that she was not competent to stand trial.
For the reasons set forth below, the court does not accept the conclusions and opinions of the defendant's witness.
The court finds that the Defendant was able, during both evaluations, to provide a detailed and cogent explanation of the facts and circumstances of the events which resulted in her arrest. She also knows the nature of the charges she faces. Although the defendant's psychological evaluator concluded that the Defendant did not know the meaning of the terms "drugs" and "narcotics," and found this to be an indicator of her incompetency, the court is not persuaded that this is so. The psychologist's testimony at hearing indicated that the Defendant knows what crack cocaine and marijuana are. The defendant, who has admitted using marijuana, told the psychologist that she wanted the court to give her a drug program. The defendant indicated to the clinical evaluation team that the cocaine allegedly found in her possession was evidence in her case, and that she was charged with possession of narcotics with intent to sell. She told her psychological evaluator that she had been paid CT Page 14188 to deliver crack cocaine by another person. When the defense psychologist asked her why she had allegedly put the cocaine packets in her mouth when she was apprehended by police, she told him that she had been instructed to do so by the person who requested her to deliver it. The court finds from all of the forgoing evidence that the Defendant understands that she is facing criminal charges as a result of her alleged illegal possession and delivery of crack cocaine and also recognizes the wrongfulness of her alleged crime.
The court also finds that the Defendant possesses an understanding of the possible legal dispositions in her case. She comprehends the meanings of the terms "jail time," "probation" and "drug program" and has indicated that the later two sentencing alternatives are preferable to the first one. The court finds that the defendant knows who her lawyer is and what her attorney will do for her at trial, and understands the adversarial nature of a criminal trial. The court finds that the Defendant can effectively communicate with her lawyer about the explicit details of her alleged crime, and about the possible results of this case.
 ADJUDICATION
An accused is not competent to stand trial if he is unable to understand the proceedings against him or to assist in his own defense. C.G.S. 54-56 d (a); State v. Pastet, 169 Conn. 13, 26,363 A.2d 41 (1975); State v. DeAngelis, 200 Conn. 224, 229
(1986). Incompetency to stand trial . . . involves a condition of the mind which prevents an accused from comprehending his position and from consulting intelligently with counsel in the preparation of his defense." State v. Pastet, op. cit., 25. Mental disease or defect does not, in and of itself, render a defendant incompetent to stand trial. "An accused may be suffering from a mental illness and nonetheless be able to understand the charges against him and assist in his defense."State v. DeAngelis, op. cit., 230.
Under Connecticut law, a defendant is presumed competent. The burden of proving incompetency by a preponderance of the evidence rests upon the party raising the issue. C.G.S. 54-56 d (b).
The court finds that the defendant has failed to meet that burden. The preponderance of the evidence presented during this proceeding established that the Defendant, although CT Page 14189 intellectually impaired, understands the nature of the criminal charges and proceedings pending against her and is able to effectively assist in her own defense. The court finds that the Defendant, Chiquita Brown, is competent to stand trial in this matter.
Dated at New London, Connecticut this 25th day of October 1999.
BY THE COURT:
Dyer, J.